BEN SUTER, CASB No. 107680
ben.suter@kyl.com
GABRIEL LEE-SANCHEZ, CASB No. 345891
gabriel.lee-sanchez@kyl.com
KEESAL, YOUNG & LOGAN
A Professional Corporation
450 Pacific Avenue
San Francisco, California  94133
Telephone:    (415) 398-6000
Facsimile:    (415) 981-0136

Attorneys for Defendant
BUILD-A-BEAR WORKSHOP, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| SONYA VALENZUELA, individually and on behalf of all others similarly situated,<br><br>                                  Plaintiff,<br><br>        vs.<br><br>BUILD-A-BEAR WORKSHOP, INC., a Delaware corporation,<br><br>                                  Defendant. | Case No. 23-cv-05162<br><br>**COMBINED NOTICE OF RELATED CASES AND NOTICE OF PENDENCY OF OTHER ACTIONS OR PROCEEDINGS**<br><br>Action Filed:          March 2, 2023<br>Action Removed:     June 29, 2023 |

PLEASE TAKE NOTICE THAT, pursuant to Local Rules 83-1.3.1 and 83-1.4, Defendant Build-A-Bear Workshop, Inc ("BABW") hereby gives its combined Notice of Related Actions and Notice of Pendency of Other Actions or Proceedings.

## I.      Related Cases Under LR 83-1.3.1

Local Rule 83-1.3.1 provides that parties must "promptly file a Notice of Related Cases whenever two or more civil cases filed in this District:

(a)  arise from the same or a closely related transaction, happening, or event;

(b)  call for determination of the same or substantially related or similar questions of law and fact; or

(c)  for other reasons would entail substantial duplication of labor if heard by different judges."

The Rule further provides that the "Notice must be filed at the time any case (including a notice of removal or bankruptcy appeal) appearing to relate to another is filed, or as soon thereafter as it reasonably should appear that the cases relate to another." L.R. 83-1.3.1.

Here, Plaintiff Sonya Valenzuela, individually and on behalf of all others similarly situated ("Plaintiff"), alleges, among other things, that BABW violated Cal. Penal Code §§ 631 and 632.7 by aiding and abetting a third-party to "wiretap and/or eavesdrop" upon conversations occurring on BABW's web chat. (*See* First Amended Class Action Complaint, ¶ 33.) Plaintiff contends BABW's web chat is actually run by, and hosted on the servers of, a third-party allowing the third-party to "analyze," "collect," and "create live transcripts" of conversations occurring on the web chat. (See *id.*, ¶¶ 10–11.) Each of the cases below involve substantially similar questions of law and fact, given that they involve materially similar allegations and claims.

A.  *Cody v. Boscov's, Inc.*, No. 8:22-cv-01434-SSS-KKx

That action and the instant action "call for determination of the same or substantially related or similar questions of law and fact[.]" *See* L.R. 83-1.3.1.  The plaintiff in that action filed a class action lawsuit proposing a class of "consumers who have accessed Defendant's website and used the chat feature." The plaintiff alleged that the defendant violated Cal. Penal Code §§ 631 and 632.7 by "aiding and abetting" third-parties to eavesdrop on customer conversations occurring on the defendant's website chat feature.

COMBINED NOTICE OF RELATED CASES AND NOTICE OF PENDENCY OF OTHER ACTIONS OR PROCEEDINGS
KYL4860-5790-7565.1

**B.** *Byars v. Goodyear Tire and Rubber Co.*, No. 5:22-cv-01358-SSS-KKx

That action and the instant action "call for determination of the same or substantially related or similar questions of law and fact[.]" *See* L.R. 83-1.3.1. The plaintiff in that action filed a putative class action complaint alleging the defendant recorded and transcribed conversations occurring on the defendant's website chat by allowing a third-party to embed a code into the defendant's website chat. The plaintiff further alleged that the defendant allowed a third-party to intercept and store conversations occurring on its website chat. The plaintiff alleges violations of Cal. Penal Code §§ 631 and 632.7.

**C.** *Licea v. Old Navy, LLC*, No. 5:22-cv-01413-SSS-SPx

That action and the instant action "call for determination of the same or substantially related or similar questions of law and fact[.]" *See* L.R. 83-1.3.1. The plaintiff in that case filed a putative class action complaint alleging the defendant embedded a function in its web chat which allowed it to record and create transcripts of customer conversations occurring on the web chat. The plaintiff further alleged that the defendant allowed a third-party (alleged to be Salesforce) to intercept customer chats in real time and retain transcripts. The plaintiff alleged violations of Cal. Penal Code §§ 631 and 632.7.[1]

**II.** **Other Actions or Proceedings Under Local Rule 83-1.4**

Local Rule 83-1.4.1 provides that "[w]henever a civil action filed in or removed to this Court involves all or a material part of the subject matter of an action

---

[1] Counsel for Plaintiff in the instant action was the plaintiff's counsel in each of *Cody*, *Byars*, and *Licea*. BABW identifies herein only the similar actions filed by counsel for Plaintiff which are currently pending. Several similar lawsuits filed by counsel for Plaintiff in the Central District have recently been voluntarily or otherwise dismissed. *See Byars v. Hot Topic, Inc.*, No. EDCV 22-1652 JGB (KKx); *Licea v. Am. Eagle Outfitters, Inc.*, No. EDCV 22-1702-MWF (JPR), *Licea v. Cinmar, LLC*, No. CV 22-6454-MWF (JEM); *Byars v. Sterling Jewelers, Inc.*, No. 5:22-cv-01456-SB-SP; *Licea v. Caraway Home, Inc.*, No. EDCV 22-1791 JGB (SHKx).

COMBINED NOTICE OF RELATED CASES AND NOTICE OF PENDENCY OF OTHER ACTIONS OR PROCEEDINGS

KYL4860-5790-7565.1

then pending before . . . any other federal or state court . . . the attorney shall file a 'Notice of Pendency of Other Actions or Proceedings' with the original complaint or petition filed in this Court." The Notice of Pendency of Other Actions or Proceedings must contain:

<ul>
<li>(a)   A description sufficient to identify all other actions or proceedings;</li>
<li>(b)   The title of the court or administrative body in which the other actions or proceedings are pending;</li>
<li>(c)   The names of the parties or participants in such other actions or proceedings;</li>
<li>(d)   The names, addresses and telephone numbers of the attorneys in such other actions or proceedings; and</li>
<li>(e)   A brief factual statement setting forth the basis for the attorney's belief that the action involves all or a material part of the subject matter of such other actions or proceedings.</li>
</ul>

*See* L.R. 83-1.4.2.

As with the cases set forth above pursuant to LR 83-1.3.1, the case below involves materially similar allegations and claims.

**A.    Valenzuela v. Keurig Green Mountain, Inc., No. 22-cv-09042-JSC (N.D. Cal.)**

That action and this action involve a material part of the same subject matter. *See* L.R. 83-1.4.1. The plaintiff in that case, Sonya Valenzuela (i.e., Plaintiff in the instant action), brought a putative class action against Keurig Green Mountain, Inc. alleging violations of Cal. Penal Code §§ 631 and 632.7. The plaintiff alleged that the defendant used a third-party to secretly embed a code into the defendant's web chat. The plaintiff further alleged that the third-party's chat software was "integrated" with "Meta subsidiaries like Facebook and WhatsApp." The plaintiff alleged that Meta sells advertisements based on information gathered from the website chats on the defendant's website. The court in that case dismissed the plaintiff's complaint with

COMBINED NOTICE OF RELATED CASES AND NOTICE OF PENDENCY OF OTHER ACTIONS OR PROCEEDINGS
KYL4860-5790-7565.1

leave to amend. *See Valenzuela v. Keurig Green Mountain, Inc.*, No. 22-cv-09042-JSC, 2023 WL 3707181, at *6 (N.D. Cal. May 24, 2023). A copy of the complaint dismissed with leave to amend is attached hereto <u>Exhibit 1</u>. The plaintiff in that case has since filed a Second Amended Complaint, which is attached hereto as <u>Exhibit 2</u>. Counsel for the plaintiff in that case is Scott J. Ferrell and Victoria Knowles, of Pacific Trial Attorneys, 4100 Newport Place Drive, Suite 800, Newport Beach, CA 92660, (949) 706-6464.  Counsel for defendants in that case are Becca J. Wahlquist of Kelley Drye & Warren LLP, 350 S. Grand Ave., Suite 3800, Los Angeles, CA 90071, (213) 547-4916 and Lauri Anne Mazzuchetti of Kelley Drye & Warren LLP, One Jefferson Road, 2nd Floor, Parsippany, NJ 07054, (973) 503-5910.[2]

DATED:  June 29, 2023                      */s/ Gabriel Lee-Sanchez*_____
                                            BEN SUTER
                                            GABRIEL LEE-SANCHEZ
                                            KEESAL, YOUNG & LOGAN
                                            Attorneys for Defendant
                                            BUILD-A-BEAR WORKSHOP, INC.

---

[2] BABW identifies only the currently pending actions involving a material part of the same subject matter.  At least two other cases involving a material part of the same subject matter filed by counsel for Plaintiff have recently been voluntarily dismissed. *See Esparza v. Lenox Corp.*, No. C 22-09004 WHA (N.D. Cal.); *Martin v. Sephora USA, Inc.*, No. 1:22-cv-01355-JLT-SAB (E.D. Cal.).

COMBINED NOTICE OF RELATED CASES AND NOTICE OF PENDENCY OF OTHER ACTIONS OR PROCEEDINGS
KYL4860-5790-7565.1

# EXHIBIT 1

PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA  92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONYA VALENZUELA, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>     v.<br><br>KEURIG GREEN MOUNTAIN, INC., a Delaware corporation d/b/a KEURIG.COM; and DOES 1 through 25, inclusive,<br><br>     Defendants. | Case No. 3:22-cv-09042-JSC<br><br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT ("CIPA")** |

**INTRODUCTION**

Defendant secretly enables and allows a third-party spyware company to eavesdrop on the private conversations of everyone who communicates through the chat feature at www.keurig.com (the "Website"). The spyware company then exploits and monetizes that data by sharing it with other third parties, who use the private chat data to bombard the unsuspecting visitor with targeted marketing.

Defendant does this without visitors' informed consent. As a result, Defendant has violated the California Invasion of Privacy Act ("CIPA").

**JURISDICTION AND VENUE**

1.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. Section 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is at least minimal diversity because at least one Plaintiff and Defendant are citizens of different states. Indeed, based upon the information available to Plaintiff, there are believed to be at least 5,000 class members, each entitled to $5,000 in statutory damages, thus making the amount in controversy at least $25,000,0000 exclusive of interests and costs.

2.     Pursuant to 28 U.S.C. § 1391, venue is proper because a substantial part of the acts and events giving rise to the claims occurred in this District.

3.     Defendant is subject to personal jurisdiction because it has sufficient minimum contacts with California and it does business with California residents.

**PARTIES**

4.     Plaintiff is a resident and citizen of California. While physically within California during the class period, Plaintiff visited Defendant's website using a smart phone and conducted a brief conversation with an agent of Defendant through the website chat feature. Plaintiff was not advised that the chat was monitored, intercepted, or recorded.

5.     Defendant is a publicly-traded American beverage and coffeemaker conglomerate with headquarters in Burlington, Massachusetts.  Formed in July 2018 from the merger of Keurig Green Mountain and Dr Pepper Snapple Group, Defendant sells over 125 hot and cold beverages. With annual sales exceeding $11 billion, it is one of the world's largest beverage conglomerates.

6.     Defendant owns, operates, and/or controls the above-referenced website.

7.     The above-named Defendant, along with its affiliates and agents, are collectively referred to as "Defendants."  The true names and capacities of the Defendants sued herein as DOE DEFENDANTS 1 through 25, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

8.     Plaintiff is informed and believes that at all relevant times, every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants.

9.     Plaintiff is informed and believe that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

## **FACTUAL ALLEGATIONS**

10.     CIPA prohibits both wiretapping and eavesdropping of electronic communications without the consent of all parties to the communication.  Compliance with CIPA is easy, and most website operators comply by conspicuously warning visitors if their conversations are being recorded, intercepted, or eavesdropped upon.[1]

---

[1]     https://www.leechtishman.com/insights/blog/the-california-invasion-of-privacy-act-californias-wiretap-act/ ("*CIPA Compliance is not difficult. A business must take certain steps. . .with a chat feature. . .to ensure that it obtains valid consent consistent with the holdings of courts interpreting CIPA.*") (last visited March 2023) (emphasis added).

11.  Unlike most companies, Defendant *ignores* CIPA.  Instead, Defendant enables and allows an independent third party to eavesdrop on all such conversations. Why?  Because, as one industry expert notes, "*Live chat transcripts are the gold mines of customer service.  At your fingertips, you have valuable customer insight to make informed business decisions. . .***When people are chatting, you have direct access to their exact pain points.***"*).  *See*  https://www.ravience.co/post/improve-marketing-roi-live-chat-transcripts (last visited March 2023) (emphasis added).

12.  Defendant's actions are not incidental to facilitating e-commerce, nor are they undertaken in the ordinary course of business. To the contrary, as noted above, Defendant's actions violate industry norms and the legitimate expectations of consumers.

13.  To enable the eavesdropping, Defendant has allowed a third party to covertly embed code into Defendant's chat feature.  On information and belief, the third party is either "WebEx", "SalesForce Audience Studio", or "FullStory") and is hereafter referred to as the "Third Party Spyware Company."  That code enables and allows the Third Party Spyware Company to secretly intercept in real time, eavesdrop upon, and store transcripts of Defendant's chat communications with unsuspecting website visitors – even when such conversations are private and personal.   Defendant neither informs visitors of this conduct nor obtains their consent to these intrusions.

14.  One might reasonably wonder why a Third Party Spyware Company would be interested in intercepting and recording the website chat interactions between Defendant and unsuspecting visitors to Defendant's website.  As shown below, it all about money.

15.  The Third Party Spyware Company's chat software is "integrated" with Meta subsidiaries like Facebook and WhatsApp.  (Integration allows various software sub-systems to share data to operate as a unified system).  According to Bloomerg.com, this is all part of Meta's secret "*plan to profit from private chats.*"  As Bloomberg explained, Meta's software integration "*can manage customer messages from multiple*

*services on one central dashboard. That's central to Meta's plan to make money off of its two messaging apps, WhatsApp and Messenger."* See https://www.bloomberg.com/news/articles/2022-02-15/meta-closes-1-billion-kustomer-deal-after-regulatory-review (last downloaded March 2023).

16. So how does it work? ***First***, Meta identifies "user interests" by monitoring a collection of "offsite" user activity, such as the private chat communications between Defendant and visitors to its website by "integrating" with the Third Party Spyware Company's software. ***Second***, Meta generates revenue by selling advertising space through its subsidiaries' ability to identify those offsite user interests. ***Third and finally***, after harvesting the chat transcripts for valuable data, Meta's brands like Facebook and WhatsApp bombard the unsuspecting website visitors with targeted advertising.

17. Through the preceding acts, Meta's subsidiary can freely boast that it will "Transform your support center into a profit generator." *See* https://www.kustomer.com/product/customer-service/ (last downloaded March 2023). Indeed, all of the schemers – Defendant, the Third Party Spyware Company, and Meta – all profit from secretly exploiting the private chat data through targeted social media advertising because "*Targeted advertising allows brands to send different messaging to different consumers based on what the brand knows about the customer. The better a brand can demonstrate that it understands what its customers want and need, the more likely customers respond to advertising and engage with the brand. Social media targeting helps brands leverage consumers' behavior on the web, search engines, and social media sites to present ads that reflect consumer interests.*"[2]

18. The Third Party Spyware Company's exploitation, monetization, use of, and interaction with the data it gathers through the chat feature in real time makes it more than a mere "extension" of Defendant.

---

[2] *See* https://www.adroll.com/blog/what-is-targeted-advertising#:~:text=Targeted%20advertising%20allows%20brands%20to,and%20engage%20with%20the%20brand (last visited March 2023).

19.     At some point affter receiving Plaintiff's pre-filing correspondence, Defendant quietly admitted to the sum and substance of the entire scheme. Specifically, Defendant updated its online privacy policy to **admit** that it does **exactly** what Plaintiff alleges herein. *See* https://www.keurig.com/content/privacy-policy ("*We collect Personal Information from a variety of sources, including from personal information you provide [using the website chat feature]. . . and share information with third parties that send you targeted advertisements.*") (last downloaded March 2023).

20.     Given the nature of Defendant's business, visitors share personal and confidential data and personally identifying information with Defendant via the Website chat feature.

21.     Within the last year, Plaintiff visited Defendant's Website. Plaintiff used a smart phone (a cellular telephone with integrated computers to enable web browsing). As such, Plaintiff's conversations with Defendant were transmitted from "cellular radio telephones" and/or "landline telephones" as defined by CIPA.

22.     By definition, Defendant's chat communications from its website are transmitted to website visitors by either cellular telephony or landline telephony. *See* https://www.britannica.com/technology/Internet ("How does the Internet work?") ("*The Internet works through a series of networks that connect devices around the world through telephone lines.*") (last visited March 2023).

23.     Defendant did not inform Class members that Defendant was secretly allowing, aiding, and abetting the Third Party Spyware Company to intercept and eavesdrop on the conversations during transmission, and then exploit the data for its own gain.

24.     Defendant did not obtain Plaintiff's or the Class members' express or implied consent for the preceding intrusions, nor did Plaintiff or Class members know at the time of the conversations of Defendant's conduct.

## CLASS ALLEGATIONS

25.     Plaintiff brings this action individually and on behalf of all others similarly

situated (the "Class") defined as follows:

> **All persons within the state of California who within the statute of limitations period: (1) communicated with Defendant via the chat feature on Defendant's Website; and (2) whose communications were recorded and/or eavesdropped upon without prior consent.**

26. <u>NUMEROSITY</u>: Plaintiff does not know the number of Class members but believes the number to be in the thousands, if not more. The exact identities of Class members may be ascertained by the records maintained by Defendant.

27. <u>COMMONALITY</u>: Common questions of fact and law exist as to all Class members, and predominate over any questions affecting only individual members of the Class. Such common legal and factual questions, which do not vary between Class members, and which may be determined without reference to the individual circumstances of any Class member, include but are not limited to the following:

    a. Whether Defendant aided and abetted a third party in eavesdropping on such communications;

    b. Whether Plaintiff and Class members are entitled to statutory penalties; and

    c. Whether Class members are entitled to injunctive relief.

28. <u>TYPICALITY</u>: As a person who visited Defendant's Website and whose electronic communication was recorded, intercepted and eavesdropped upon, Plaintiff is asserting claims that are typical of the Class.

29. <u>ADEQUACY</u>: Plaintiff will fairly and adequately protect the interests of the members of The Class. Plaintiff has retained attorneys experienced in the class action litigation. All individuals with interests that are actually or potentially adverse to or in conflict with the class or whose inclusion would otherwise be improper are excluded.

30.     SUPERIORITY: A class action is superior to other available methods of adjudication because individual litigation of the claims of all Class members is impracticable and inefficient.  Even if every Class member could afford individual litigation, the court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.

## FIRST CAUSE OF ACTION

### Violations of the California Invasion of Privacy Act

### Cal. Penal Code § 631

31.     Section 631(a) of California's Penal Code imposes liability upon any entity that "by means of any machine, instrument, contrivance, or in any other manner," (1) "intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system," or (2) "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state" or (3) "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section". *Here, Defendant does all three.*

32.     Section 631 of the California Penal Code applies to internet communications and thus applies to Plaintiff's and the Class's electronic communications with Defendant's Website.  "Though written in terms of wiretapping, Section 631(a) applies to Internet communications.  It makes liable anyone who 'reads, or attempts to read, or to learn the contents' of a communication 'without the consent of

all parties to the communication.' *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. 2022).

33.    The Third Party Spyware Company's software embedded on Defendant's Website to record and eavesdrop upon the Class's communications qualifies as a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct alleged herein.

34.    At all relevant times, Defendant intentionally caused the internet communication between Plaintiff and Class Members with Defendant's Website to be recorded.  Defendant also aided, abetted at least one third party to eavesdrop upon such conversations during transmission and in real time.

35.    Plaintiff and Class Members did not expressly or impliedly consent to any of Defendant's actions.

36.    Defendant's conduct constitutes numerous independent and discreet violations of Cal. Penal Code § 631(a), entitling Plaintiff and Class Members to injunctive relief and statutory damages.

37.    In a materially identical case, a court recently held that the above-described allegations state viable claims for violations of section 631(a) of CIPA.  *See Byars v. The Goodyear Tire & Rubber Co.*, No. 5:22-cv-01358-SSS-KKx, 2023 WL 1788553, *4 (C.D. Cal. Feb. 3, 2023) (Sykes, J.) ("*Byars contends that Goodyear, using a third-party service, "intercepts in real time" a website visitors' chat conversation.  Byars alleges that, using the chat conversation, website visitors share sensitive personal information.  Because Byars has pled sufficient facts to show the contents of the communications and that the communications were intercepted, Byars has sufficiently stated a claim under § 631(a).*") (emphasis added).

38.    In a materially identical case, a court recently held that the above-described allegations state viable claims for violations of section 632.7 of CIPA.  *See Byars v. The Goodyear Tire & Rubber Co.*, No. 5:22-cv-01358, 2023 WL 1788553, *5 (C.D. Cal. Feb. 3, 2023) (Sykes, J.) ("*Byars' alleged communication with Goodyear occurred via*

*Goodyear's chat feature on its website. Byars accessed Goodyear's website using her smartphone. As smartphones are cellular phones with web capabilities, Byars' smartphone falls within the cellular phone category. Because Byars' contends that users of Goodyear's website "share highly sensitive personal data" via Goodyear's chat feature, Byars has sufficiently alleged that website users had a reasonable expectation of privacy and therefore the communications fall within the scope of § 632.7.")* (emphasis added).

## SECOND CAUSE OF ACTION

### Violations of the California Invasion of Privacy Act

### Cal. Penal Code § 632.7

39.     Section 632.7 of California's Penal Code imposes liability upon anyone "who, without the consent of all parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone."

40.     Plaintiff and the class members communicated with Defendant using telephony subject to the mandates and prohibitions of Section 632.7.

41.     Defendant's communication from the chat feature on its website is transmitted via telephony subject to the mandates and prohibitions of Section 632.7.

42.     As set forth above, Defendant recorded telephony communication without the consent of all parties to the communication in violation of Section 632.7.

43.     As set forth above, Defendant also aided and abetted a third party in the interception, reception, and/or intentional recordation of telephony communication in violation of Section 632.7.

44.     Defendant's conduct constitutes numerous independent and discreet violations of Cal. Penal Code § 632.7, entitling Plaintiff and Class members to injunctive relief and statutory damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief against Defendant:

1.     An order certifying the Class, naming Plaintiff as the representative of the Class and Plaintiff's attorneys as Class counsel;

2.     An order declaring Defendant's conduct violates CIPA;

3.     An order of judgment in favor of Plaintiff and the Class and against Defendant on the causes of action asserted herein;

4.     An order enjoining Defendant's conduct as alleged herein and any other injunctive relief that the Court finds proper;

5.     Statutory damages pursuant to CIPA;

6.     Reasonable attorneys' fees and costs; and

7.     All other relief that would be just and proper as a matter of law or equity, as determined by the Court.

Dated:  March 9, 2023                    PACIFIC TRIAL ATTORNEYS, APC

By:_____
Scott. J. Ferrell
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2023, I electronically filed the foregoing **FIRST AMENDED CLASS ACTION COMPLAINT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

*/s/ Scott J. Ferrell*
Scott J. Ferrell

# EXHIBIT 2

1    **PACIFIC TRIAL ATTORNEYS**
A Professional Corporation
2    Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
3    Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4    4100 Newport Place Drive, Suite 800
Newport Beach, California 92660
5    Telephone: (949) 706-6464
Facsimile: (949) 706-6469
6

7    Attorneys for Plaintiff

8                 **UNITED STATE DISTRICT COURT**

9             **NORTHERN DISTRICT OF CALIFORNIA**

10

11    SONYA VALENZUELA, individually and on    Case No. 3:22-cv-09042-JSC
behalf of all others similarly situated,
12

13           Plaintiff,      **SECOND AMENDED CLASS ACTION
COMPLAINT FOR VIOLATION OF THE
v.                CALIFORNIA INVASION OF PRIVACY
ACT ("CIPA")**
14    KEURIG GREEN MOUNTAIN, INC., a
Delaware corporation d/b/a KEURIG.COM; and
15    DOES 1 through 25, inclusive,

16          Defendants.      Filed: December 21, 2022

17

18

19

20

21

22

23

24

25

26

27

28

## I.     <u>INTRODUCTION</u>

**Defendant Keurig Green Mountain, Inc. ("Defendant") secretly enables and allows a third-party spyware company to wiretap and eavesdrop upon the private conversations of everyone who communicates through the chat feature at <u>www.keurig.com</u> (the "Website").  The spyware company then exploits and monetizes that data by sharing it with other third parties, who use the private chat data to bombard the unsuspecting visitor with targeted marketing.**

**Defendant does this without visitors' informed consent.  As a result, Defendant has violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630 *et seq*.**

## II.     <u>JURISDICTION AND VENUE</u>

1.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is at least minimal diversity because at least one plaintiff and Defendant are citizens of different states. Indeed, based upon the information available to Plaintiff Sonya Valenzuela ("Plaintiff"), there are believed to be at least 5,000 class members, each entitled to $5,000 in statutory damages, thus making the amount in controversy at least $25,000,0000 exclusive of interests and costs.  *See* Cal. Penal Code § 637.2(a)(1).

2.     Pursuant to 28 U.S.C. § 1391, venue is proper because a substantial part of the acts and events giving rise to the claims occurred in this District.

3.     Defendant is subject to personal jurisdiction because it has sufficient minimum contacts with California.  Defendant is subject to jurisdiction under California's "long-arm" statute found at California Code of Civil Procedure § 410.10 because the exercise of jurisdiction over Defendant is not "inconsistent with the Constitution of this state or the United States."  Indeed, Plaintiff believes that Defendant generates a minimum of eight percent of its national website sales to Californians, such that the Website "is the equivalent of having a brick-and-mortar store in California – a 'virtual store.'" *Thurston v. Fairfield Collectibles of Georgia, LLC*, 53 Cal. App. 5th 1231, 1240 (2020) (citing *Stomp, Inc. v. NeatO, LLC*, 61 F. Supp. 2d 1074, 1078 n.7 (C.D. Cal. 1999)).  Since this case involves wrongdoing related to the operation of Defendant's Website, which functions as an online store selling goods and products including

coffee and related brewing accessories, California courts can "properly exercise personal jurisdiction" over Defendant in accordance with the Court of Appeal opinion in *Thurston v. Fairfield Collectibles of Georgia, LLC*, 53 Cal. App. 5th 1231, 1237-42 (2020).

### III. PARTIES

4. Plaintiff is a resident and citizen of California. In August 2022 while physically within California, Plaintiff visited Defendant's Website using a smart phone and conducted a brief conversation with an agent of Defendant through the Website's chat feature. Plaintiff was not advised that the chat was monitored, intercepted, or recorded, nor did she consent thereto.

5. Defendant is part of a publicly traded American coffee and beverage conglomerate, Keurig Dr Pepper, Inc., with its headquarters in Burlington, Massachusetts. It manufactures and sells over 125 beverages throughout the United States and in this District. With annual net sales of over $14 billion, Defendant is part of a conglomerate constituting one of America's largest specialty retailers.

6. Defendant owns, operates, and/or controls the Website.

### IV. FACTUAL ALLEGATIONS

**A. Background of CIPA**

7. CIPA prohibits both wiretapping and eavesdropping of electronic communications without the consent of all parties to the communication. "'[T]he right to control the nature and extent of the firsthand dissemination of [one's] statements'" is viewed by the California Supreme Court "as critical to the purposes of Section 631[.]" *Javier v. Assurance IQ, LLC*, 2023 WL 114225, at *6 (N.D. Cal. Jan. 5, 2023) (Breyer, J.) (quoting *Ribas v. Clark*, 38 Cal. 3d 355, 361 (1985)); *Ribas*, 38 Cal. 3d at 360-61 ("a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device"). "[U]nder Section 631, it has always mattered who is holding the tape recorder[.]" *Javier*, 2023 WL 114225, at *6.

8. Compliance with CIPA is easy, and most website operators comply by conspicuously warning visitors if their conversations are being recorded, intercepted, or eavesdropped upon.[1]

---

[1] https://www.leechtishman.com/insights/blog/the-california-invasion-of-privacy-act-californias-wiretap-act/ ("[C]ompliance [with CIPA] is not difficult. A business must take certain steps, as part of its privacy program, to ensure that **any time the business is gathering**, either automatically, or **with a chat feature**,
Continued on the next page

SECOND AMENDED COMPLAINT         No. 3:22-cv-09042-JSC

9.    Unlike most companies, Defendant *ignores* CIPA.  Instead, Defendant enables and allows a third party that has no corporate affiliation with Defendant to eavesdrop on all such conversations.  Why?  Because, as one industry expert notes, "*Live chat transcripts are the gold mines of customer service.  At your fingertips, you have valuable customer insight to make informed business decisions. . . .**When people are chatting, you have direct access to their exact pain points.***").  *See* https://www.ravience.co/post/improve-marketing-roi-live-chat-transcripts (last visited May 16, 2023) (emphasis added).

10.    Defendant's actions are not incidental to facilitating e-commerce, nor are they undertaken in the ordinary course of business. To the contrary, as noted above, Defendant's actions violate industry norms and the legitimate, reasonable expectations of consumers.

**B.    Defendant Allows Oracle to Intercept Consumers' Chats During Transmission**

11.    To enable the eavesdropping, Defendant has allowed a third party, Oracle, to covertly embed its Oracle CX chat technology code designed by "RightNow Technologies," into Defendant's chat feature.  Indeed, as shown below, whenever a consumer chats via Defendant's Website, the chat is routed *through* www.rightnowtech.com:



12.    In other words, before the chat even gets to Defendant, Oracle intercepts it, copies it, and forwards it along to Defendant.  The chats meant for Defendant are first routed *through* Oracle.  The communication from a consumer, and transmitted through Oracle to Defendant, are not encrypted.

---

*personal data of a consumer/website visitor*, *that it obtains valid consent consistent with the holdings and determinations of the courts interpreting CIPA and other applicable Data Privacy laws.*") (last visited May 11, 2023) (emphasis added).

× Headers  Payload  Preview  Response  Initiator  Timing

▼ Query String Parameters    view source    view decoded
    pool: 21752:2

▼ Request Payload    view source
  ▼ {body: "I was wanting to get a reusable pod/filter", clientRequestTime: "2023-05-19T20:09:21.314Z",…}
      body: "I was wanting to get a reusable pod/filter"
      clientRequestTime: "2023-05-19T20:09:21.314Z"
      messageId: "1684526961306"
      offTheRecord: false

13.     As shown above, the secret code is a type of automatic routing software that automatically acquires and transmits user chat communications to Oracle without any active input from either Defendant's employees, agents, or human representatives, or Oracle's employees, agents, or human representatives.  Oracle acquires Website visitors' chat communications by first having the Oracle CX software route them to Oracle's own computer servers that it owns, controls, and maintains.  The secret code enables and allows Oracle to secretly intercept in real time, eavesdrop upon, and store transcripts of consumers' chat communications they *think* they are having with Defendant, even when such conversations may be private and personal.  Defendant neither informs visitors of this conduct nor obtains their consent to these intrusions.

14.     One might reasonably wonder why Oracle would be interested in intercepting and recording the Website chat interactions between Defendant and unsuspecting visitors to Defendant's Website.  As shown below, it all about money.

15.     The Oracle CX software is integrated with social media platforms like Facebook: "Oracle RightNow Social Experience enabled brands to harness consumer influence and passion in service of the brand. It extended your customers' experience to the places where consumers are learning, sharing, and buying across social media including social media monitoring branded online communities, and a full-service Facebook experience."  *See* https://www.oracle.com/cx/service/rightnow/ (last visited May 31, 2023).

16.     Oracle admits to its real-time data collection from its clients' (like Defendant) users: "Oracle RightNow Analytics Cloud provided actionable insights, empowering frontline workers to make better and quicker decisions. Fully integrated across all Customer Experience (CX) products, Oracle delivers full visibility across all customer touchpoints, spanning customer service, sales, marketing, and feedback functions. **Oracle Analytics provides visibility across all interaction channels by capturing, organizing, presenting, and _disseminating real-time actionable knowledge_ with speed and**

**flexibility**…. Today's customers demand new experiences driven by personalized channels and choices. Each customer journey is unique, but you need to ensure each experience is seamless and personalized. Leverage best-of-breed CX solutions by channel or bring them together into a connected engagement through data, behavioral intelligence, and experiences across all lines of business. *See* https://www.oracle.com/cx/service/rightnow/ (last visited May 31, 2023) (emphasis added).

17.     Oracle acquired the now Oracle CX software from RightNow Technologies which boasted that the software "allowing companies to monitor and interact with customers via Facebook from RightNow CX, a customer experience suite. RightNow CX for Facebook gives companies the opportunity to provide exceptional customer service experiences to those eager to engage with a brand on Facebook fan pages." *See* https://www.destinationcrm.com/Articles/CRM-News/CRM-Featured-News/RightNow-Launches-RightNow-CX-for-Facebook-70083.aspx?CategoryID=263 (last visited May 31, 2023).  The software "enables organizations to: Answer questions directly from the agent desktop[;] Capture all Facebook interactions in the unified customer record[;] Monitor and respond to posts on on [*sic*] the company's Facebook wall[;] Moderate the conversation on thee [*sic*] company's Facebook page[;] Track and report on activity in Facebook."  (*Id.*)[2]

18.     The foregoing shows that Oracle's chat software is "integrated" with Meta, Inc.'s subsidiaries like Facebook and WhatsApp.  The integration allows various software sub-systems to share data to operate as a unified system.  According to Bloomberg.com, this is all part of Meta's secret "***plan to profit from private chats.***"  As Bloomberg explained, Meta's software integration "*can manage customer messages from multiple services on one central dashboard. That's central to Meta's plan to make money off of its two messaging apps, WhatsApp and Messenger.*"  *See* https://www.bloomberg.com/news/articles/2022-02-15/meta-closes-1-billion-kustomer-deal-after-regulatory-review (last visited May 31, 2023) (emphasis added).

19.     So how does it work?  ***First***, Meta identifies "user interests" by monitoring a collection of

---

[2] Further, "'What [RightNow is] trying to do is to give the user the option to find the answer to their question in the manner that they want to engage with the company - either via community opinion, or through a search in a knowledgebase or through direct interaction with an agent," says Kate Leggett, senior analyst of customer service and call center processes at Forrester. "My take is that it's customer service on the customer's terms, but within the umbrella of the customer service offerings from the company.' RightNow CX for Facebook hopes to give organizations an opportunity to abolish silos, integrating information obtained through Facebook to better understand the customer experience."  (*Id.*)

"offsite" user activity such as website visits and interactions (including private chat communications between Defendant and visitors) by "integrating" its software with Oracle's software. ***Second***, Meta generates revenue by selling advertising space through its subsidiaries' ability to identify those offsite user interests. ***Third and finally***, after the chat transcripts intercepted by Oracle are provided to Meta through "integration", Meta brands like Facebook and WhatsApp bombard the unsuspecting Website visitors with targeted advertising based upon the user's Website visits and interactions.

20. Through the preceding acts, Meta subsidiaries can freely boast that they can "Transform your support center into a profit generator by bulk messaging specific customer segments based on your unique data…to reengage dissatisfied customers." *See* https://www.kustomer.com/product/customer-service/ (last downloaded May 16, 2023). Indeed, all of the schemers – Defendant, Oracle, and Meta – all profit from secretly exploiting the chat data through targeted social media advertising because "*Targeted advertising allows brands to send different messaging to different consumers based on what the brand knows about the customer. The better a brand can demonstrate that it understands what its customers want and need, the more likely customers respond to advertising and engage with the brand. . . . Social media targeting helps brands leverage consumers' behavior on the web, search engines, and social media sites to present ads that reflect consumer interests.*" *See* https://www.adroll.com/blog/what-is-targeted-advertising#:~:text=Targeted%20advertising%20allows%20brands%20to,and%20engage%20with%20the%20brand (last visited May 16, 2023).

21. As such, Oracle does more than merely provide a storage function for Website users' chat communications with Defendant. It is more than the proverbial "tape-recorder" in the hand of Defendant. Instead, Oracle uses its record of Website users' interaction with Defendant's chat feature for data analytics and marketing/advertising to consumers. Oracle's exploitation, monetization, use of, and interaction with the data it gathers through the chat feature on Defendant's Website in real time makes it a third-party interceptor and eavesdropper known to and enabled by Defendant under section 631(a), rather than a mere extension of Defendant and/or party to the communication with Website visitors.

22. Given the nature of Defendant's business, visitors may share personal and confidential data and personally identifying information with Defendant via the Website chat feature.

23.     Defendant did not inform Class members that Defendant was secretly allowing, aiding, and abetting Oracle to intercept and eavesdrop on the conversations during transmission, or that Oracle provided data from such transcripts to Meta and similar entities through "integration" of their softwares.

24.     Defendant did not obtain Plaintiff's or the Class members' express or implied consent for the preceding intrusions, nor did Plaintiff or Class members know at the time of the conversations of Defendant's conduct.

## CLASS ALLEGATIONS

25.     Plaintiff brings this action individually and on behalf of all others similarly situated (the "Class") defined as follows:

**All persons within the state of California who within the statute of limitations period: (1) communicated with Defendant via the chat feature on Defendant's Website; and (2) whose communications were recorded and/or eavesdropped upon without prior consent.**

26.     <u>NUMEROSITY</u>: Plaintiff does not know the number of Class members but believes the number to be in the thousands, if not more. The exact identities of Class members may be ascertained by the records maintained by Defendant.

27.     <u>COMMONALITY</u>: Common questions of fact and law exist as to all Class members, and predominate over any questions affecting only individual members of the Class. Such common legal and factual questions, which do not vary between Class members, and which may be determined without reference to the individual circumstances of any Class member, include but are not limited to the following:

a.      Whether Defendant aided and abetted a third party in eavesdropping on such communications;

b.      Whether Plaintiff and Class members are entitled to statutory penalties; and

c.      Whether Class members are entitled to injunctive relief.

28.     <u>TYPICALITY</u>: As a person who visited Defendant's Website and whose electronic communication was recorded, intercepted and eavesdropped upon, Plaintiff is asserting claims that are typical of the Class.

29.     ADEQUACY: Plaintiff will fairly and adequately protect the interests of the members of The Class. Plaintiff has retained attorneys experienced in the class action litigation.  All individuals with interests that are actually or potentially adverse to or in conflict with the class or whose inclusion would otherwise be improper are excluded.

30.     SUPERIORITY: A class action is superior to other available methods of adjudication because individual litigation of the claims of all Class members is impracticable and inefficient.  Even if every Class member could afford individual litigation, the court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.

## CAUSE OF ACTION

### Violations of the California Invasion of Privacy Act

### Cal. Penal Code § 631(a)

31.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

32.     "Any person who, by means of any machine, instrument, or contrivance, or in any other manner,… [ii] willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or [iii] who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or [iv] who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by a fine . . . ." *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1080 (C.D. Cal. 2021) (Holcomb, J.) (line breaks and headings of clauses added for ease of reference) (quoting Cal. Penal Code § 631(a)).

33.     Clauses ii through iv of section 631(a) of the California Penal Code applies to internet communications and thus applies to Plaintiff's and the Class's electronic communications with Defendant's Website.  "Though written in terms of wiretapping, Section 631(a) applies to Internet communications.  It makes liable anyone who 'reads, or attempts to read, or to learn the contents' of a communication 'without the consent of all parties to the communication.'" *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. 2022); *Yoon*, 549 F. Supp. 3d at 1080 ("Courts agree … that CIPA §

631 applies to communications conducted over the internet.") (citing *Matera v. Google Inc.*, 2016 WL 8200619, at \*18 (N.D. Cal. Aug. 12, 2016) (Koh, J.) (holding that second clause of section 631(a) "encompasses email communications, which pass over wires, lines, or cables")); *In re Google Inc. Gmail Litig.*, 2013 WL 5423918, at \*21 (N.D. Cal. Sept. 26, 2013) (Koh, J.) ("the Court finds that section 631 of CIPA applies to emails"); *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 826 (N.D. Cal. 2020) (Labson Freeman, J.).

34. Oracle's software embedded on Defendant's Website to record and eavesdrop upon the Class's communications qualifies as a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct alleged herein. *See In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 937 (N.D. Cal. 2015) (stating that "***it is undeniable that a computer may qualify as a 'machine'***" within the meaning of section 631(a)) (emphasis added), *aff'd in part and rev'd in part on other grounds*, 956 F.3d 589 (9th Cir. 2020).

35. At all relevant times, Defendant intentionally caused the internet communication between Plaintiff and Class members with Defendant's Website to be recorded. Defendant also aided and abetted, agreed with, employed, or conspired with at least one third party to wiretap and/or eavesdrop upon such conversations during transmission and in real time by voluntarily embedding Oracle's software code on Defendant's Website.

36. Defendant knows that Oracle, through software, captures the electronic communications of visitors to Defendant's Website, and pays it to conduct these activities.

37. Plaintiff and Class members did not expressly or impliedly consent to any of Defendant's or Oracle's actions.

38. In a materially identical case, a court recently held that the above-described allegations state viable claims for violations of section 631(a) of CIPA. *See Byars v. The Goodyear Tire & Rubber Co.*, No. 5:22-cv-01358-SSS-KKx, 2023 WL 1788553, at \*4 (C.D. Cal. Feb. 3, 2023) (Sykes, J.) ("*Byars contends that Goodyear, using a third-party service, "intercepts in real time" a website visitors' chat conversation. . . . Byars alleges that, using the chat conversation, website visitors share sensitive personal information. . . . . Because Byars has pled sufficient facts to show the contents of the communications and*

*that the communications were intercepted, Byars has sufficiently stated a claim under § 631(a).*")
(emphasis added).

39.     Defendant's conduct constitutes numerous discrete violations of Cal. Penal Code § 631(a),
entitling Plaintiff and/or Class members to injunctive relief and statutory damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief against Defendant:

1.     An order certifying the Class, naming Plaintiff as the representative of the Class and
       Plaintiff's attorneys as Class counsel;

2.     An order declaring Defendant's conduct violates CIPA;

3.     An order of judgment in favor of Plaintiff and the Class and against Defendant on the
       causes of action asserted herein;

4.     An order enjoining Defendant's conduct as alleged herein and any other injunctive relief
       that the Court finds proper;

5.     Statutory damages pursuant to CIPA;

6.     Reasonable attorneys' fees and costs; and

7.     All other relief that would be just and proper as a matter of law or equity, as determined
       by the Court.

Dated:  June 6, 2023                    PACIFIC TRIAL ATTORNEYS, APC


                                        By: */s/ Scott J. Ferrell*
                                        Scott. J. Ferrell
                                        Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on June 6, 2023, I electronically filed the foregoing SECOND AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT ("CIPA") with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

Dated: June 6, 2023

*/s/ Scott J. Ferrell*
Scott J. Ferrell